# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RODNEY GLOVER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3678** |
| **N. BURL CAIN, WARDEN** | **SECTION "J"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Rodney Glover, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] Glover, and two co-defendants, Daniel Tapia and Corey Shamburger, were indicted by a grand jury in Orleans Parish and charged with the second degree murder of Otis Bailey.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> Officer Matthew Robinson testified that he was assigned to the narcotics task force on April 11, 2003. He had set up a meeting with his confidential informant (CI) at 7:00 p.m. in the Calliope Housing Project. He was sitting in his Cadillac with dark tinted windows parked in the driveway facing the courtyard where he was to meet the CI. It was still light outside. The officer stated: "I observed a white vehicle pull up, occupied by – at the time it looked like it was occupied only twice, by a white male driving and one black male passenger, who was the defendant. . . . That vehicle passed me up. It stopped directly in front of my vehicle, and the front right passenger, the defendant here, stepped out of that vehicle. . . ." Officer Robinson testified that the defendant, who was wearing a long sleeved blue sweatshirt, exited the white car and reached into the car to retrieve a gray hooded sweatshirt. He said that the defendant put on the gray sweatshirt, zipped it up, put on the hood, and tied it so that only his eyes were visible; therefore, no one could see his face.
> Officer Robinson testified that the defendant went to the corner of the building, a place from which he could see the entire courtyard. Then a rear passenger, who had slouched down so that the officer could not see him, opened the right rear door and crawled out of the white car. The second man walked in front of the white car and along the building to the corner where the defendant was positioned. As the second man walked, he removed what he believed to be a white T-shirt from his waistband, and used it to disguise his face. The defendant, who was still peering around the corner of the building, removed a stainless steel automatic weapon from his rear waistband and motioned to the second man. Officer Robinson said that he could see a black male, now known to be the victim, who was wearing black jean shorts and a white T-shirt, walking

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 2 of 13, Indictment, 6/5/03.

in the direction of the two men hiding behind the corner. As the victim walked closer, "the defendant turns the corner with his weapon in his hand and the individual [the victim] attempts to turn and run. And there was the first shot that was fired." The officer stated that the victim fell to the ground because of the shot or he stumbled. The victim was then on his hands and knees "trying to crawl away, get back to his feet." Officer Robinson testified:

> The first individual [the defendant] is alongside of him, like in a skipping motion, with the weapon pointed to the ground shooting, shooting into his body. At that point the second individual is finished disguising himself. He runs around the corner also, and he also has the victim at his feet, you know, like on a side angle, shooting him also.

The officer said that after the shooting stopped, both men ran back through the driveway, where he was parked, and across Erato Street. By that time, the officer was on the radio telling the other officers what had happened and the location. He stated that as the two suspects fled out of the courtyard, he exited the driveway and went back to Erato Street so that he could keep an eye on the two. The officer said that he then saw the white car parked on Erato; the vehicle pulled off at a slow pace, the two suspects ran across the street in front of the white car, and then it drove on. Officer Robinson said that he attempted to follow the two men, but they went down an alleyway through which his car could not follow. He then followed the white car because he thought that it would eventually pick up the suspects. He followed the car down Erato Street to Galvez Street, turned left onto Galvez Street, and then again onto Earhart Boulevard. The white car made a U-turn on Earhart by the community center, passed up the driveway, and backed into a spot so that it could pull straight out onto Earhart.

Officer Robinson stated that he waited at the intersection of the U-turn and the median for about ten or fifteen seconds. He then saw the defendant and the second suspect, later identified as Shamburger, running through a basketball court area and entering the white car. The officer said that he then parked at Galvez and Earhart so that he could view the area. When the car exited the driveway, it traveled riverbound on Earhart, and the officer alerted the other officers over the radio. Other officers made the stop and took four suspects into custody without incident. Officer Robinson said that he parked his car, and then looked inside the white car for the gray hooded sweatshirt. Under the right front seat he found the sweatshirt, within which he found a semi-automatic weapon. He also retrieved a revolver, which was wrapped in a white T-shirt underneath the driver's seat. He then unloaded the weapons and found a magazine for the semi-automatic weapon.

Officer Robinson testified that he asked the defendant what was going on. The officer told the defendant that he had observed his actions from putting on the

3

sweatshirt to shooting the victim, and the defendant said that he had to get Bailey (the victim) before Bailey got him and Shamburger. According to the defendant, Bailey had fired shots at him a few days before. The officer said that he had a good view of the victim's hands as he walked toward the defendant, and they were not in his pockets. He said that by the time that Shamburger went around the corner of the building, the victim was already on his back, and both men were firing at him. He said that both Shamburger and the defendant were wearing blue jeans. The officer noted that the white car was a Dodge Eagle Concord, but it looked like a Dodge Intrepid. He said that he had followed the car from a distance of about a block.

State v. Glover, 923 So.2d 988 (La. App. 4th Cir. 2006) (Table); State Record Volume 10 of 13, Fourth Circuit Opinion, 2004-KA-1868, pages 4-6, January 30, 2006.

On January 9, 2004, the state trial court granted a motion to sever the trials.[4] Eventually, Shamburger entered a plea of guilty to an amended charge of manslaughter on July 12, 2004, and was sentenced to 30 years in prison.[5]

Tapia was found guilty of second degree murder on April 7, 2005, after a three-day jury trial.[6] The state trial court, however, granted Tapia's motion for a new trial on December 11, 2007.[7] Tapia eventually entered a guilty plea on January 28, 2009, to the

---

[4] St. Rec. Vol. 1 of 13, Hearing Minutes, 1/9/04.

[5] St. Rec. Vol. 1 of 13, Plea Minutes (Shamburger), 7/12/04; St. Rec. Vol. 2 of 13, Indictment, 6/5/03 (handwritten amendment dated 7/12/04).

[6] St. Rec. Vol. 1 of 13, Trial Minutes (Tapia), 4/5/05; Trial Minutes (Tapia), 4/6/05; Trial Minutes (Tapia), 4/7/05.

[7] St. Rec. Vol. 1 of 13, Minute Entry, 12/11/07.

amended charge of manslaughter.[8] The state trial court sentenced him to serve 15 years in prison.[9]

In the meantime, Glover was tried before a jury on March 16, 17, and 18, 2004, and he was found guilty as charged of second degree murder.[10] The state trial court sentenced Glover on April 5, 2004, to serve life in prison without benefit of parole, probation, or suspension of sentence.[11]

On appeal to the Louisiana Fourth Circuit, Glover's counsel raised three grounds for relief:[12] (1) The state trial court erred in allowing the State to use the statement made to Officer Robinson because the State violated discovery rules, the statement was unreliable, and the statement was taken in violation of his constitutional rights. (2) The state trial court erred in denying the motion for new trial based on the use of the statement. (3) The state trial court erred in denying the motion for new trial based on the State's improper closing argument. The court affirmed the conviction and sentence on January 30, 2006, finding no merit to Glover's claims.

---

[8]St. Rec. Vol. 1 of 13, Plea Minutes (Tapia), 1/28/09; St. Rec. Vol. 2 of 13, Indictment, 6/5/03 (handwritten amendment dated 1/28/09).

[9]St. Rec. Vol. 1 of 13, Sentencing Minutes (Tapia), 4/3/09.

[10]St. Rec. Vol. 1 of 13, Trial Minutes, 3/16/04; Trial Minutes, 3/17/04; Trial Minutes, 3/18/04; St. Rec. Vol. 5 of 13, Jury Verdict, 3/18/04; St. Rec. Vol. 9 of 13, Trial Transcript, 3/16-18/04; St. Rec. Vol. 11 of 13, Trial Transcript (continued), 3/16-18/04.

[11]St. Rec. Vol. 1 of 13, Sentencing Minutes, 4/5/04; St. Rec. Vol. 11 of 13, Sentencing Transcript, 4/5/04.

[12]St. Rec. Vol. 10 of 13, 4th Cir. Opinion, 2004-KA-1868, 1/30/06.

Glover's conviction became final 30 days later, March 1, 2006, because he did not seek rehearing or file for timely review in the Louisiana Supreme Court.[13] Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction).

Thereafter, on April 6, 2006, Glover mailed an untimely[14] writ application, which was filed by the Louisiana Supreme Court on May 30, 2006, seeking review of only two claims:[15] (1) The state trial court erred in allowing the State to use the statement made to Officer Robinson because the State violated discovery rules, the statement was unreliable, and the statement was taken in violation of his constitutional rights. (2) The state trial court erred in denying the motion for new trial based on the State's prejudicial

---

[13]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[14]Id. Glover had 30 days from issuance of the appellate court's decision, or until March 1, 2006, to file a writ application in, or mail one to, the Louisiana Supreme Court. La. S. Ct. R. X§5; see also, Causey v. Cain, 450 F.3d 601 (5th Cir. 2006) (mailbox rule applies to state filings for timeliness purposes on habeas review). Glover concedes in his memorandum in support of the habeas petition that he mailed the writ application to the Louisiana Supreme Court on April 6, 2006, and it was filed by the court on May 30, 2006. See Rec. Doc. No. 1, Memorandum in Support, p. 4; St. Rec. Vol. 3 of 13, La. S. Ct. Letter, 2006-KH-1275, 5/30/06; St. Rec. Vol. 10 of 13, La. S. Ct. Writ Application, 06-KH-1275, 5/30/06.

[15]St. Rec. Vol. 10 of 13, La. S. Ct. Writ Application, 06-KH-1275, 5/30/06.

6

closing argument. The Louisiana Supreme Court denied the application without reasons on January 8, 2007.[16]

More than 14 months later, on March 31, 2008, Glover submitted an application for post-conviction relief to the state trial court, asserting a claim of ineffective assistance of counsel based on counsel's alleged failure adequately to cross-examine the State's witnesses, investigate and subpoena defense witnesses, and prompt the state trial court to charge the jury on the lesser offense of manslaughter under the felony-murder provision.[17] The state trial court denied relief on April 16, 2008, finding that the claim of ineffective assistance of counsel was not supported by the record.[18]

The Louisiana Fourth Circuit denied Glover's subsequent writ application on June 27, 2008, finding no error in the trial court's ruling.[19] The Louisiana Supreme Court later denied Glover's writ application to that court without reasons on April 24, 2009.[20]

---

[16] State v. Glover, 948 So.2d 119 (La. 2007); St. Rec. Vol. 10 of 13, La. S. Ct. Order, 2006-KH-1275, 1/8/07.

[17] St. Rec. Vol. 3 of 13, Uniform Application for Post-Conviction Relief, signed 3/31/08. Glover submitted a duplicate copy signed April 2, 2008. St. Rec. Vol. 5 of 13, Uniform Application for Post-Conviction Relief, 4/2/08; Letter from Court, 8/15/08. Neither application bears a file stamp or filing date.

[18] St. Rec. Vol. 5 of 13, Trial Court Judgment, 4/16/08.

[19] St. Rec. Vol. 12 of 13, 4th Cir. Writ Application, 2008-K-641, 5/20/08 (signed 5/13/08); 4th Cir. Order, 2008-K-0641, 6/27/08.

[20] St. Rec. Vol 12 of 13, La. S. Ct. Writ Application, 08-KH-1706, 7/30/08 (signed 7/17/08, postmarked 7/18/08); State ex rel. Glover v. State, 7 So.3d 1196 (La. 2009); St. Rec. Vol. 12 of 13, La. S. Ct. Order, 2008-KH-1706 (4/24/09).

II. <u>FEDERAL HABEAS PETITION</u>

On May 29, 2009, the clerk of this court filed Glover's petition for federal habeas corpus relief in which he raises three grounds for relief:[21] (1) Counsel gave ineffective assistance when he failed adequately to investigate a defense strategy. (2) Counsel gave ineffective assistance when he failed adequately to cross-examine Officer Robinson. (3) Counsel gave ineffective assistance when he refused to allow the state trial court to include manslaughter under the felony-murder doctrine as a responsive verdict.

The State filed a response in opposition to the petition, arguing that Glover's federal petition was not timely filed.[22]

III. <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore

---

[21]Rec. Doc. No. 1.

[22]Rec. Doc. No. 11.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Glover's petition, which, for reasons discussed below, is deemed filed in a federal court on April 28, 2009.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Glover's petition was not timely filed in this court. This conclusion is supported by the record.

IV.   STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[25] Duncan v. Walker, 533 U.S. 167, 179-80

---

[24] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Glover's petition was filed by the clerk of court on May 29, 2009, when the filing fee was paid. Glover dated his signature on the petition on April 28, 2009. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

[25] The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
   (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus
   by a person in custody pursuant to the judgment of a State court. The limitation period

9

(2001). Glover's conviction was final on March 1, 2006, which was 30 days after the Louisiana Fourth Circuit affirmed his conviction and sentence and he did not pursue timely review in the Louisiana Supreme Court. Butler, 533 F.3d at 317, 319.

Glover argues, however, that he could not seek timely review in the Louisiana Supreme Court because he and his lawyer did not receive a copy of the Louisiana Fourth Circuit's opinion in time to do so.[26] Under La. S. Ct. Rule X§5, the mailing of the appellate court's opinion, not the receipt of it, sets the start of the time for seeking further review. Bryant v. State of Louisiana, No. 06-0088, 2007 WL 2323383 at *5-7 (E.D. La. Aug. 9, 2007) (Duval, J.) (time period under La. S. Ct. Rule X§5 begins from issuance

---

       shall run from the latest of--
- A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
- B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
- C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
- D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

[26]St. Rec. Vol. 12 of 13, Mail Affidavit, 3/6/06, showing counsel did not receive her copy of the opinion until February 27, 2006, and mailed it to Glover on March 6, 2006. She indicates the cause of the delay to have been mail delays caused by Hurricane Katrina, which the court notes struck the area about six (6) months earlier in late August 2005.

10

of notice of the appellate court's judgment not upon receipt of the notice). The record reflects that the Louisiana Fourth Circuit's opinion was issued and mailed to the parties on January 30, 2006.[27] The fact that Glover received the copy at a later date did not restart the finality of his conviction or the period for seeking review in the higher court. Jasmine v. Hubert, No. 06-512, 2008 WL 199867 at *4 (E.D. La. Jan. 22, 2008) (Berrigan, J.) (citing Williams, 217 F.3d at 308).

Thus, under a literal application of the statute, Glover had one year from the date his conviction became final, or until March 1, 2007, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).

---

[27]St. Rec. Vol. 10 of 13, Mail Certificate, 2004-KH-1868, 1/30/06.

Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

To whatever extent, if any, Glover seeks equitable tolling for the pendency of his untimely writ application to the Louisiana Supreme Court, he has not met his burden. Glover, referencing his counsel's letter, alleges that postal mail delay was a cause for the untimeliness of his 2006 Louisiana Supreme Court writ application.[28] A postal mail delay, however, does not qualify as the type of rare and exceptional circumstance which warrants equitable tolling. See Bryant v. Louisiana, No. , 2007 WL 2323383 (E.D. La. Aug. 9, 2007) (Duval, J.) (recognizing that ordinary mail delays do not warrant equitable tolling); see also, Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002) (mere attorney error or neglect is not a sufficient basis to award tolling); United States v. Riggs, 314 F.3d 796, 800 (5th Cir. 2002) (no equitable tolling where an attorney's error or neglect caused a petition to be filed late). Furthermore, as discussed below, even if equitable tolling applied for the pendency of the 2006 writ application, Glover's federal petition would still be untimely.

Nevertheless, Glover has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably

---

[28]St. Rec. Vol. 12 of 13, Mail Affidavit, 3/6/06.

tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in recent decisions. See Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (Equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed

13

application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being

15

challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Glover's case on March 2, 2006, the day after his conviction was final. The limitations period ran uninterrupted for 365 days, until March 1, 2007, when it expired. Glover had no properly filed state post-conviction or other collateral review pending during that time period.

As discussed above, Glover submitted a writ application to the Louisiana Supreme Court during that time period. Glover concedes that he mailed it to the court on April 6, 2006, and the court filed it on May 30, 2006.[29] That filing, however, was untimely under La. S. Ct. R. X§5 because it was mailed and filed more than 30 days after the Louisiana Fourth Circuit ruled on Glover's direct appeal. See Butler v. Cain, 533 F.3d at 317. Under federal habeas corpus law, this untimely filing cannot be considered in the tolling calculation. Id., at 319 (La. S. Ct. R. X§5(a) forbids any extension of time); Williams v. Cain, 217 F.3d at 309-11 (same).

I further note however, that, after denial of this writ application by the Louisiana Supreme Court on January 8, 2007, Glover allowed another 447 days to lapse without having a properly filed state court post-conviction or other collateral review proceeding

---

[29]Rec. Doc. No. 1, Memorandum in Support, p. 4.

of any kind pending. Thus, even if he were to benefit from some tolling for the pendency of his untimely writ application to the Louisiana Supreme Court, he later allowed well more than one year to lapse without any tolling and without pursuing federal habeas corpus relief.

Therefore, the record establishes that, after his conviction became final, Glover allowed more than one year to lapse without any properly filed and pending state court proceeding and without having filed a timely federal petition for habeas corpus relief. Thus, his federal habeas corpus petition must be dismissed as time-barred.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the petition of Rodney Glover for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this ___3rd___ day of November, 2009.

                                      JOSEPH C. WILKINSON, JR.
                                 UNITED STATES MAGISTRATE JUDGE